CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
December 08, 2025
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## HARRISONBURG DIVISION

| | |
|---|---|
| 5th Congressional District Republican Committee *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | )     Civil Action No. 5:25-cv-00059 |
| v. | ) |
| | ) |
| John O'Bannon *et al.*, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Twenty-nine local Virginia Republican Party Committees and one Committee Chairman filed a lawsuit alleging that a provision of Virginia election law violates their First Amendment associational rights and Fourteenth Amendment due process rights. Before the court is Defendants' motion to dismiss for lack of subject matter jurisdiction and failure to state a claim and Plaintiffs' motion for leave to conduct jurisdictional discovery. (Dkts. 47, 55.) For the reasons stated below, the court will grant Defendants' motion as to both counts and deny Plaintiffs' motion.

## I.      Background[1]

In Virgina, the major political parties rely on a web of smaller committees in districts, counties, cities, and towns to produce nominees for local office. The Republican Party of Virginia sets forth its internal rules, including those governing their candidate nomination processes, in its Plan of Organization ("the Plan"). (*See* Compl. ¶¶ 40–41.) The Plan grants

---

[1] The facts are taken from Plaintiffs' complaint and are accepted as true when addressing a motion to dismiss. *Kerns v. United States,* 585 F.3d 187, 192 (4th Cir. 2009).

these committees the "power and responsibility to determine the method by which the Republican candidates for public office for their respective [localities] shall be nominated." (*See id.* ¶¶ 42, 44, 46.)  Pursuant to the Plan, committees may choose to use one of four methods of nomination: mass meeting, convention, party canvass, or primary.[2]  (*Id.* ¶¶ 45, 47.)

The Plan requires that "only those individuals who adhere to the principles of the Party are qualified to participate in the activities of the Party, including in the processes by which the Party nominates its candidates for public office."  (*Id.* ¶ 48.)  Virginia, though, requires primary elections, which are administered by the Virginia Department of Elections, to be open to "all persons qualified to vote."  (*Id.* ¶¶ 64); Va. Code Ann. § 24.2-530.  Therefore, the state Republican Party cannot limit participation in state-run primaries to only the voters "who are qualified to [vote in the elections] under the Plan," namely, those voters that "adhere to the principles of the Party."  (Compl. ¶ 48, 66.)

Virginia law explicitly grants the "duly constituted authorities of the political party for the district, county, city, or town" the "right to determine the method by which a party nomination for" a non-statewide position shall be made.  Va. Code Ann. § 24.2-509(A).  In 2021, the Virginia legislature added a third sentence to Section 24.2-509(A), requiring that the chosen nomination method must provide for absentee participation for certain groups of voters.  *See* H.B. 2020 (2021) (now codified at Va. Code § 24.2-509(A)).  These groups include qualified voters who (1) are disabled, (2) have a communicable disease or have come into contact with someone who has, (3) are active-duty service members, (4) are temporarily

---

[2] While Legislative and Unit Committees can choose any of the four methods, District Committees may choose only among convention, party canvass, or primary.  (*See* Compl. ¶ 43, 45, 47.)

residing outside of the United States, or (5) are attending an institution of higher education. Va. Code Ann. § 24.2-509(A). The statute prohibits the "duly granted authorities" from selecting a nomination method that has "the practical effect" of excluding these voters. *Id.*

On February 16, 2024, the Attorney General of Virginia issued an advisory opinion ("the Opinion") related to Section 24.2-509(A). (Compl. ¶ 58; AG Op. (Dkt. 51-2).)[3] In the Opinion, the Attorney General states that "under § 24.2.-509(A), a political party may not select a nomination method that *de facto* requires covered voters to be physically present to participate or that otherwise has the practical effect of excluding their participation." (Compl. ¶ 59; AG Op. at 1.)

On June 16, 2025, twenty-nine committees of the Republican Party of Virginia and the Chairman of one of those committees filed a Complaint against the Virginia Department of Elections and its Board members. (*See* Compl.) Plaintiffs allege that the absentee protections in the third sentence of Section 24.2-509(A) "preclud[e] the use of any method of nomination for Party nominees other than a public primary," and therefore violate Plaintiffs' associational rights under the First Amendment. (*Id.* ¶¶ 61, 72-76.)

Plaintiffs allege that the text of Section 24.2-509(A) and the Attorney General's Opinion show that Defendants—the Department of Elections and its Board Members— "enforce the [statute] to preclude the use of any method of nomination for Party nominees

---

[3] The court considers the Attorney General Opinion here since it is "integral to the complaint and there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd*, 822 F.3d 159, 166 (4th Cir. 2016). State Attorney General opinions are government documents subject to judicial notice. *See United States v. Lawson*, 677 F.3d 629, 654 (4th Cir. 2012). Several of Plaintiffs' claims in the Complaint are "based on[] statements contained in" the Attorney General Opinion. *See Goines*, 822 F.3d at 166. Plaintiffs attach the Opinion to their response brief, (Dkt. 51-1), and Defendants do not dispute the court's consideration of the Opinion; in fact, they ask the court to consider it. (*See* Def.'s Br. at 4 n.1.)

for public office other than a public primary." (*Id.* ¶ 60.) Forced to use a public, state-run primary, Plaintiffs are left without any way to limit the participation in their nominations for local office to those qualified under the Party Plan. (*See id.* ¶¶ 61–66.) As Plaintiffs interpret them, the text of the Section 24.2-509(A) and the Attorney General's Opinion have chilled Plaintiffs from attempting to use any non-primary nomination method. (*Id.* ¶ 61, 63.)

Plaintiff Kenneth H. Adams, the Chairman of the 36th House of Delegates Committee, is required under Virginia law to certify the nomination method for his district and the nominees selected using that method. (*Id.* ¶ 67–68.) Should Adams refuse to make those certifications, Plaintiffs claim, he risks being charged with a misdemeanor under Va. Code § 24.2-10001. (*Id.* ¶ 69.) Adams is therefore forced to "choose between his obligations under the Plan and the dictates of [Section 24.2-509(A)], on pain of criminal sanctions." (*Id.* ¶ 70.)

In Count I, Plaintiffs challenge Section 24.2-509(A) as applied and on its face. (*Id.* ¶ 4.) They allege that the statute violates and chills their First Amendment associational rights by "usurping their right and responsibility under the Plan to determine the method of nomination for Party candidates for public office" and "compelling them to select Party candidates for public office by a method that is not limited to members or adherents of the Party." (*Id.* ¶¶ 72–74.) They also allege that the statute is not narrowly tailored to serve a compelling interest. (*Id.* ¶ 76.)

In Count II, Plaintiffs bring a challenge under the Fourteenth Amendment, alleging that Section 24.2-509(A) is unconstitutionally vague. (*Id.* ¶¶ 78–86.) They claim that the statute "does not define any of the terms used in it," "does not specify what methods of nomination other than a public primary" would comply, and "does not set out the

consequences for a failure to comply with its provisions." (*Id.* ¶¶ 82–83, 85.)  Plaintiffs ask the court to declare that the third sentence of Section 24.2-509(A) violates the First and Fourteenth Amendments, and to issue a permanent injunction barring Defendants from enforcing its requirements.  (*Id.* at 19.)

Defendants, the Virginia Department of Elections and its Board members, filed a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim on August 4, 2025.  (Dkt. 47.)  Plaintiffs responded two weeks later, and Defendants filed their reply one week after that.  (Pl.'s Resp. (Dkt. 51); Def.'s Reply (Dkt. 54).)  On September 4, 2025, in response to Defendants' motion to dismiss, Plaintiffs filed a motion for extended jurisdictional discovery along with a supporting brief.  (Dkts. 55, 56.)  Defendants responded two weeks later.  (Dkt. 59.)

## II.     Standard of Review

Challenges to subject matter jurisdiction brought under Federal Rule of Civil Procedure 12(b)(1) may take one of two forms: (1) a facial challenge, which asserts the "complaint simply fails to allege facts upon which subject matter jurisdiction can be based"; or (2) a factual challenge, which asserts "that the jurisdictional allegations of the complaint [are] not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).  When a defendant raises a facial challenge to subject matter jurisdiction, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Id.*

### III.    Analysis

The subsection of Virgina law at issue in this case, Va. Code § 24.2-509(A), reads in full:

> The duly constituted authorities of the state political party shall have the right to determine the method by which a party nomination for a member of the United States Senate or for any statewide office shall be made.  The duly constituted authorities of the political party for the district, county, city, or town in which any other office is to be filled shall have the right to determine the method by which a party nomination for that office shall be made.  *A method of nomination shall not be selected if such method will have the practical effect of excluding participation in the nominating process by qualified voters who are otherwise eligible to participate in the nominating process under that political party's rules but are unable to attend meetings because they are (i) a member of a uniformed service, as defined in § 24.2-452, on active duty; (ii) temporarily residing outside of the United States; (iii) a student attending a school or institution of higher education; (iv) a person with a disability; or (v) a person who has a communicable disease of public health threat as defined in § 32.1-48.06 or who may have come in contact with a person with such disease.*  However, such restriction shall not apply when selecting a candidate for a special election or nominating a candidate pursuant to § 24.2-539, or in the event that no candidate files the required paperwork by the deadline prescribed in § 24.2-522.

Va. Code Ann. § 24.2-509(A) (emphasis added).  Plaintiffs challenge the third sentence of the statute (italicized above), claiming that it effectively precludes them from choosing any non-primary nominating method.  Defendants claim that Plaintiffs do not have standing and that their claims are not ripe, and that even if the court finds subject matter jurisdiction, Plaintiffs have failed to state a claim.  (Def.'s Br. at 1–2 (Dkt. 48).)  The court analyzes the standing and ripeness arguments separately and finds that it lacks subject matter jurisdiction over Plaintiffs' claims.

### A.  Standing

Under Article III of the U.S. Constitution, a federal court may exercise subject matter jurisdiction only over "cases" and "controversies."  U.S. Const. Art. III, § 2; *see Lujan v. Defs.*

*of Wildlife*, 504 U.S. 555, 559 (1992).  "Embedded in this limitation is a set of requirements that together make up the 'irreducible constitutional minimum of standing.'"  *Griffin v. Dep't of Lab. Fed. Credit Union*, 912 F.3d 649, 653 (4th Cir. 2019) (quoting *Lujan*, 504 U.S. at 560) (cleaned up).  To establish Article III standing, a plaintiff must show that he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

Plaintiffs allege that they are injured because they interpret the statute to compel them to use a public state-run primary, therefore "chilling [them] from using method of nomination for Party nominees for public office other than a public primary" and violating their First Amendment right of free association.  (*See* Compl. ¶¶ 60–63, 72–75.)  Defendants counter that Plaintiffs do not have standing, as they have not alleged facts showing an injury, much less an injury that is traceable to the challenged statute.  (*See* Def.'s Br. at 11–14.)

An injury in fact must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  *Long v. Bondi*, 151 F.4th 503, 515 (4th Cir. 2025) (quoting *Lujan*, 504 U.S. at 560).  A plaintiff alleging a future injury must show that it is "certainly impending"; allegations of "*possible* future injury" are not sufficient.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).  In a pre-enforcement challenge, a plaintiff need not "wait for government enforcement or sanctions to bring a challenge," but they still must "allege an intention to do something prohibited by the statute and a credible threat of prosecution under it."  *LaFave v. Cnty. of Fairfax*, 149 F.4th 476, 485 (4th Cir. 2025) (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–59 (2014)) (cleaned up).

Plaintiffs claim their injury is the statute's invasion "through actual or threatened enforcement" against their right to determine their internal rules governing candidate selection.  (*See* Pl.'s Resp. at 15.)  Plaintiffs are correct in asserting that they have a right to determine their internal rules.[4]  *See New York State Bd. of Elections v. Lopez Torres*, 552 U.S. 196, 202 (2008) ("A political party has a First Amendment right to . . . choose a candidate-selection process that will in its view produce the nominee who best represents its political platform."); *see also Cal. Democratic Party v. Jones*, 530 U.S. 567, 572–73 (2000) ("[O]ur cases vigorously affirm the special place the First Amendment reserves for, and the special protection it accords, the process by which a political party selects a standard bearer who best represents the party's ideologies and preferences.") (cleaned up).  But Plaintiffs fail to sufficiently allege that the statute invades this right.

Plaintiffs claim that the statute "usurp[s] their right . . . to determine the method of nomination" and "compel[s] them to select Party candidates for public office by a method that is not limited to the members or adherents of the Party."  (Compl. ¶¶ 72–73.)  The statute does no such thing.  In fact, the statute does the opposite: it explicitly grants the "duly constituted authorities of the political party for the district, county, city, or town"— Plaintiffs—the right "to determine the method by which a party nomination for that office shall be made."  Va. Code Ann. § 24.2-509(A).  And nowhere in the statute is a requirement that Plaintiffs open their nomination methods to non-Republican voters.  The third sentence

---

[4] This right, though, is not absolute. "States have a major role to play in structuring and monitoring the election process, including nominee selection." *6th Cong. Dist. Republican Comm. v. Alcorn*, 913 F.3d 393, 402 (4th Cir. 2019) (quoting *Cal. Democratic Party v. Jones*, 530 U.S. 567, 572 (2000)) (cleaned up).  For example, the Supreme Court has considered it "too plain for argument" that a State may require parties to use the primary format for selecting their nominees in the interest of resolving intraparty competition in a democratic fashion. *Lynchburg Republican City Cmty. v. Va. Dep't of Elections*, 793 F. Supp. 3d 765, 777 (W.D. Va. 2025) (quoting *Cal. Democratic Party*, 530 U.S. at 572) (cleaned up).

of subsection (A)—the focus of this case—simply requires those "duly constituted authorities" to choose a nomination method that ensures that certain voters are not excluded from absentee participation in practice. *Id.* The thrust of Plaintiffs' argument is that the absentee protection provision invalidates the sentence that precedes it because of how it is enforced.

Plaintiffs fall short of showing actual injury because they do not allege facts to suggest that that the statute was ever enforced against them. In an attempt to show enforcement against them, Plaintiffs claim in their response brief that the Virgina Republican Party's Director of Candidate Services emailed Plaintiff Adams that "a state-run primary is essentially the only method of nomination for 2025" and, separately, that the state "Elections Administration" accepted the state Republican party chairs' plans to use primaries across the state, thereby "ignor[ing]" Plaintiffs' "authority to determine the method of nomination." (Pl.'s Resp. at 12–13.) The court cannot consider these allegations because "a plaintiff may not amend his complaint through briefing." *Collins v. Clarke*, No. 7:22-cv-00406, 2023 WL 4109773, at *2 n.3 (W.D. Va. June 21, 2023) (citing *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013)). But even if the court could consider these allegations, they only show that members of the state Republican party, who are not parties to this case, limited Plaintiffs' authority.

Far from showing "Defendants' decision to strip legislative district committees of their power to determine the method of nomination," (Pl.'s Resp. at 13), these allegations do not suggest anything about Defendants' enforcement of the statute. In fact, "where the alleged injury is caused by the Party's voluntary choice"—in this case, limiting Plaintiffs' authority to

decide their nomination methods—Plaintiffs have "no complaint" that their right to govern their internal rules has been substantially burdened by statute because "the source of the complaint is the [P]arty's own decision." *24th Senatorial Dist. Republican Cmty. v. Alcorn*, 820 F.3d 624, 632–33 (4th Cir. 2016) (quoting *Marshall v. Meadows*, 105 F. 3d 904, 906 (4th Cir. 1997)).

Plaintiffs do not allege that they submitted a proposal for a non-primary method, much less that one was rejected pursuant to the statute. Thus, Plaintiffs' assertion that the Defendants or the statute compelled or compels them to use a state-run primary as the only method of nomination is conclusory.

Any argument for imminent or future harm likewise fails, since Plaintiffs do not allege any non-speculative facts suggesting that there is a "substantial risk" that enforcement will happen "in the near future." *Holmes v. Elephant Ins. Co.*, 156 F.4th 413, 429 (4th Cir. 2025) (quoting *Murthy v. Missouri*, 603 U.S. 43, 58 (2024)). Plaintiffs attempt to allege a substantial risk of injury through their allegations relating to Plaintiff Kenneth Adams, the Chairman of 36th House of Delegates District Republican Committee. (*See* Compl. ¶¶ 67–70.) Plaintiffs say that Section 24.2-509(A) forces Adams to "choose between his obligations under the [Republican Party] Plan and the dictates of the [statute], on pain of criminal sanctions." (Compl. ¶ 70.) He is so forced, according to Plaintiffs, because Virginia law requires Adams to certify whether a primary has been chosen for his district as the method of nomination (Va. Code § 24.2-516) and to certify the candidates for said primary (Va. Code § 24.2-527), so if he does not make those certifications, he risks being charged with a misdemeanor (Va. Code § 24-2.1001). (Compl. ¶¶ 67–69.)

A review of the referenced provisions shows that Adams faces no such choice and no such threat of "criminal sanctions." Section 24-2.1001 provides that an election official's "willful neglect of his duty" is punishable by a misdemeanor charge. As explained above, Section 24.2-509(A) prohibits the party from choosing a nominating method that excludes, in practice, certain groups of voters. Section 24.2-516 requires Adams to notify the Board *whether* his district is adopting a primary as its nominating method. *If the district chooses a primary as its nomination method*, Section 24.2-527 requires Adams to provide the Board with the names of the candidates and certify that each have met the voter signature requirements. But if the district chooses a non-primary nominating method, Adams is instead required, under Va. Code § 24.2-511, to certify those nominations to the Board within five days after the nomination deadline.

Plaintiffs cite no authority or enforcement history to suggest that a failure to choose a primary as the nomination method or to certify candidate names constitutes a "willful neglect of [] duty" under Section 24.2-1001 in the first place. But even assuming that it would, Adams still is not "forc[ed]" to "choose between his obligations under the Plan" of cabining nomination proceedings to party members and "the dictates of [Section 24.2-509(A)]," (Compl. ¶ 70). Section 24.2-509(A) plainly does not require the use of open primaries as the only nominating method. Should Adams' district prefer to use a non-primary nomination method, that method must comply with Section 24.2-509(A)'s requirements for absentee protections, and Adams must certify the nominations pursuant to Section 24.2-511. The court finds no reason to believe Adams is incapable of doing so while upholding his obligations

- 11 -

under the Plan.  Plaintiffs have therefore failed to allege that Adams faces a substantial risk of injury.

In the rest of the Complaint, Plaintiffs do not allege which nomination method they intend to propose for the next election cycle, or why Defendants would necessarily find that method out of compliance with Section 24.2-509(A).  The Complaint is therefore devoid of any showing that Plaintiffs are "immediately in danger of sustaining some direct injury." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) (quoting *Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923)).

But Plaintiffs remind the court that an "injury in fact can be actual *or threatened*."  (Pl.'s Resp. at 14.)  They argue that the threat of enforcement here is "neither 'conjectural' nor 'hypothetical'" because the law applies to them.  (Pl.'s Resp. at 18.)  But a party is not injured by a law just because it applies to them.  *See Keegan v. United States*, 325 U.S. 478, 505 (1945) ("No one can urge the unconstitutionality of a statute until he shows that it is applicable to him *and that he is injured by it.*") (emphasis added).  And Plaintiffs do not allege any facts to suggest they were threatened with enforcement by Defendants.  They try to plead around this omission by arguing that the Attorney General Opinion on the statute (1) implies that state-run primaries are the only nomination method that would survive the statute's requirements and (2) "suggest[s] that Defendants are likely to vigorously enforce" the statute.  (Pl.'s Resp. at 18.)  This argument fails for two reasons.

First, Attorney General Opinions are just that, opinions.  They are not binding law or sources of law, and Plaintiffs cannot conjure a threat of enforcement from the Opinion. "Simply advising other departments does not give the Attorney General control over *enforcing*

the [statute]." *Doyle v. Hogan*, 1 F.4th 249, 256 (4th Cir. 2021). "It is the Department of Elections, not the Attorney General, that will be implementing the [statute] and evaluating parties' frontline efforts to comply with it." *Lynchburg Republican City Comm. v. Va. Dep't of Elections*, 793 F. Supp. 3d 765, 781 (W.D. Va. 2025).

Next, the Attorney General Opinion on the statute does not say what Plaintiffs claim it says. Plaintiffs argue that the "content of the Opinion suggest[s] that the Defendants are likely to vigorously enforce the Act." (Pl.'s Resp. at 18.) Specifically, Plaintiffs point to the Attorney General's statements that (1) "a political party may not select a nomination method that *de facto* requires covered voters to be physically present to participate" and (2) "historically," the non-primary nomination methods have "depended on the participants' attendance and physical presence." (*Id.* at 11–12.) Taken together, Plaintiffs argue, the "implication is obvious" that the "'practical effect' of the [statute] itself is to prevent the use of any method other than a primary." (*Id.*)

The implication is far from obvious. In his opinion, the Attorney General explicitly states that "Section 24.2-509(A) does not contain a *per se* prohibition against any particular method of nominating candidates." (AG Op. at 4.) And Plaintiffs themselves argue later in their brief that the Attorney General "refused to commit one way or the other" as to whether the statute permitted non-primary nomination methods. (Pl.'s Resp. at 26.)

In support of their argument, Plaintiffs point to the Attorney General's discussion of accommodations for active-duty service members. (*Id.* at 12.) The Attorney General notes the "extraordinary efforts" taken by the Department of Defense and the Virginia Department of Elections to "address [the] challenges" inherent in ensuring active-duty members are not

excluded from participation in a party's nomination process.  (AG Op. at 4.)  He then concludes that "[a] political party's failure to address these challenges in a like manner when nominating a candidate through a [non-primary] method *could* have the practical effect of excluding participation by military personnel, in violation of [the statute]."  (*Id.* at 4–5 (emphasis added).)  Plaintiffs argue that expecting "volunteer members of a Party committee to be able to replicate the combined efforts of the Department of Defense and the State Board of elections is unrealistic, and if that is the standard to which Party run processes will be subjected, then such processes will necessarily run afoul of the [statute]."  (Pl.'s Resp. at 12.)  But nowhere in the Opinion or in the statute is a mandate to replicate those efforts.  The Department of Elections will evaluate Plaintiffs' compliance with the statute should Plaintiffs submit a proposal for a non-primary nomination method.  The Attorney General's Opinion does nothing to suggest that Defendants would enforce the statute in a certain way.

Plaintiffs also argue that the Attorney General Opinion suggests vigorous enforcement by Defendants because "the Attorney General has every means, as well as every incentive, to ensure that the [statute] is enforced pursuant to the admittedly vague interpretation he offered."  (Pl.'s Resp. at 18.)  But to challenge the statute, Plaintiffs must "show more than the fact that state officials stand ready to perform their general duty to enforce laws."  *Doe v. Duling*, 782 F.2d 1202, 1206 (4th Cir. 1986).  Plaintiffs simply fail to show a credible threat of enforcement.

In fact, Plaintiffs "have not identified a single prosecution, or threat of prosecution" under the statute, and thus any allegations of harm are based on "hypothetical events not presented in this case."  *See Fitzgerald v. Alcorn*, 285 F. Supp. 3d 922, 947 (W.D. Va. 2018).  In

the face of these factual deficiencies, Plaintiffs lean on their claim that the statute created a "distorting" or "chilling" effect on their political decision making.  (*See, e.g.*, Compl. at ¶¶ 63, 74; Pl.'s Resp. at 4, 13, 17.)  They primarily argue that this distorting effect constitutes an actual injury under *Miller v. Brown*, 462 F.3d 312 (4th Cir. 2006).  (*See* Pl.'s Resp. at 15–17.)

Plaintiffs' reliance on *Miller* is inapposite, and their allegations of a chilling effect are not sufficient to show injury in fact.  In *Miller*, Virginia's 11th Senatorial District Republican Committee and its Chairman brought a First Amendment challenge to Virginia's open primary law.  462 F.3d at 314–15.  The Republican candidate running for the 11th District's state senate seat, who was the incumbent, submitted his proposal to the 11th District Committee designating a primary as his chosen nomination method, exercising his authority to choose the nomination method under Va. Code § 24.2-509(B).  *Id.* at 315.  The Republican Party of Virginia had just amended its Plan of Organization to exclude voters who had participated in the nomination process of a different party within the preceding five years from voting in the Republican primary.  *Id.* at 314.  When the Committee informed the Virginia State Board of Elections of its decision to hold the 2007 primary consistent with the exclusive policy set forth in the Plan of Organization, the Board responded that the closed primary conflicted with Virginia's open primary law.  *Id.* at 315–16.  The Committee then filed a declaratory judgment action under § 1983, seeking a declaration that Virginia's open primary law violated their constitutional rights to free association.  *Id.* at 316.  The district court granted the defendants' motion to dismiss for lack of subject matter jurisdiction, ruling that the plaintiffs lacked standing and that the case was not ripe.  *Id.*

The United States Court of Appeals for the Fourth Circuit reversed, finding that plaintiffs did in fact have standing and their claims were ripe for review. *Id.* at 318, 321.  The court found that "the mere existence of the open primary law causes [campaign planning decisions] to be made differently than they would absent the law," and that "plaintiff's alleged injuries are actual and threatened" because "campaign planning decisions have to be made months, or even years, in advance of the election to be effective." *Id.* at 317–318.

Plaintiffs in this case argue that, in summary, the *Miller* court found that the "mere existence of the [open primary] law, even prior to its enforcement, had a distorting effect on political decision making," and that said distorting effect was an "actual injury sufficient to establish standing." (Pl.'s Resp. at 17.)  This finding, they argue, is directly applicable to the present case, since "the existence of the [statute] . . . is clearly altering political decision-making in Virginia." (*Id.*)  In support, Plaintiffs assert that every office eligible for a primary will use a primary as the nomination method in 2025, which is a "clear response to the threat that the [statute] presents." (*Id.*)

Plaintiffs' invocation of *Miller* is out of place because the present case is a different situation entirely.  A similar case challenging Section § 24.2-509(A) was decided in this district in July 2025, and its analysis distinguishing *Miller* from those facts is applicable here on nearly identical facts:

> The Committee challenges a law which, by its text, is reasonable and does not facially infringe upon their rights, unlike *Miller*.  Furthermore, the Committee has not sought approval of any nomination method from the Department of Elections in compliance with the law, unlike *Miller*—where the plaintiffs had already proposed a plan and been rejected.  The Committee only speculates that its future attempts will be rejected and its rights burdened.  Whereas *Miller* left only a legal question to be resolved, the Committee's claims here hinge upon

future factual uncertainties and administrative actions that render them unfit for
this Court's intervention.

*Lynchburg Republican City Comm.*, 793 F. Supp. 3d at 783.   While that court included this
discussion in its ripeness analysis, the factual distinctions from *Miller* are just as applicable to
the standing analysis here.

Any allegation of a chilling effect intended to ground an injury in fact must be
"objectively reasonable"; "subjective or speculative accounts" of a chilling effect are not
enough.   *Benham v. City of Charlotte, N.C.*, 635 F.3d 129, 135 (4th Cir. 2011) (cleaned up).
Defendants persuasively argue that Plaintiffs' allegations of a distorting or chilling effect are
"based on entirely subjective assumptions about how the law will be enforced." (Def.'s Reply
at 9.) Plaintiffs' allegations of a chilling effect are not objectively reasonable because the statute
plainly does not proscribe the conduct they allege it does.

For example, Plaintiffs argue the statute poses an actual "threat" that influences their
decision making when considered with Va. Code § 24.2-516.   (Pl.'s Resp. at 17.)  Section 24.2-
516 provides that a party must notify the Board of Elections "not more than 125 days and not
less than 105 days" before the primary date of their decision whether to adopt a primary or
not.  Va. Code Ann. § § 24.2-516.  This sets a twenty-day window for notification to the Board.
Plaintiffs claim that "should a party committee select a non-primary method, and subsequently
have that non-primary method invalidated under the [statute] after closure of the notification
window, the committee would have no ability to revert to a primary" and would therefore "be
left unable to nominate any candidate for the office in question." (Pl.'s Resp. at 17.)

But Plaintiffs misconstrue the statute to mandate that all adjudication on their proposed
non-primary nomination method take place within the twenty-day window. (*See* Pl.'s Resp. at

20.)  The provision "does not expressly preclude a political party from developing and seeking approval of their non-primary method" more than 125 days before the primary date.  *Lynchburg Republican City Comm.*, 793 F. Supp. 3d at 786.  Also, Plaintiffs' allegation that should they use a non-primary method in the future, Defendants would not honor the results, is without any factual support.  (*See* Compl. ¶ 86.)  Far from being objectively reasonable, Plaintiffs alleged chilling effect constitutes a "subjective chill" based on their "perception of the system," which is not enough for Article III standing.  *See Laird v. Tatum*, 408 U.S. 1, 13–14 (1972) (cleaned up).

"There are, of course, occasions when the chilling effect of a statute is so powerful and the rights it inhibits so important that the mere existence of the statute may warrant judicial intervention."  *Duling*, 782 F.2d at 1206.  "These cases, however, must be rare, for otherwise the case or controversy requirement would be set at naught."  *Id.*  This is not one of those rare cases.  Plaintiffs did not sufficiently allege that they faced any enforcement of the statute or even a credible threat of enforcement, nor that they experienced the chilling effect that is objectively reasonable.  Their claim for Article III standing therefore fails on the injury in fact prong.

Even if Plaintiffs had alleged an injury in fact, they still fail to allege an injury that is "fairly traceable" to the Defendant's conduct.  *Spokeo, Inc.*, 578 U.S. at 338.  Traceability requires a "causal connection between the injury and the conduct complained of."  *Long*, 151 F.4th at 515.  Here, the conduct complained of is the mere existence of Section 24.2-509(A) and a possibility of Defendants' hypothetical enforcement of the statute.  Plaintiffs do not put forth a specific traceability argument in response to Defendants' motion to dismiss, other than

to argue that an injury just needs to be *fairly,* not exactly, traceable.  (Pl.'s Resp. at 14.)
Unfortunately for Plaintiffs, their claims of injury are not traceable at all because they caused
their own injury.  *DiCocco v. Garland*, 52 F.4th 588, 592 (4th Cir. 2022) ("A plaintiff's injury is
not fairly traceable to the defendant's action if the plaintiff independently caused his own
injury.") (cleaned up).  Plaintiffs' allegations of injury all trace back to the decisions they made
voluntarily based on their misinterpretation of Virginia law or hypothetical expectations of
enforcement.  That the statute precludes them from choosing a non-primary nomination
method, (Compl. ¶ 61), that Section 24.2-516 narrows the nomination method evaluation
window too short for adjudication, (Pl.'s Resp. at 17), that the Attorney General Opinion
shows Defendants will enforce Section 24.2-509(A) to preclude non-primary nomination
methods, (Compl. ¶ 60)—none of these claims are traceable to *Defendants'* conduct.  Rather,
these speculative claims are rooted in Plaintiff's own interpretation of the relevant statutes and
the Opinion.  Plaintiffs claim for Article III standing, therefore, also fails on traceability.

## B. Ripeness

Even if Plaintiffs had standing, their claims are not ripe for judicial resolution.  Like
standing, ripeness "arises from the case and controversy requirement of Article III."  *Whitaker
v. Monroe Staffing Servs., LLC*, 42 F.4th 200, 206 (4th Cir. 2022).  To determine whether a case
is ripe, courts weigh "(1) the fitness of the issues for judicial decision and (2) the hardship to
the parties of withholding court consideration."  *Wild Virginia v. Council on Env't Qual.*, 56 F.4th
281, 294 (4th Cir. 2022) (quoting *Deal v. Mercer Cnty. Bd. of Educ.*, 911 F.3d 183, 191 (4th Cir.
2018)).  If a plaintiff has not yet suffered injury, and any future impact "remains wholly
speculative," a claim should be dismissed as unripe.  *Doe v. Va. Dep't of State Police*, 713 F.3d

745, 758 (4th Cir. 2013) (quoting *Gasner v. Bd. of Supervisors*, 103 F.3d 351, 361 (4th Cir. 1996)).

Plaintiffs bear the burden of demonstrating ripeness. *Wild Virginia*, 56 F.4th at 293.

Plaintiffs' suit challenges the legality of Section 24.2-509(A) both on its face and as applied. (Compl. ¶ 1.)  The two challenges are slightly different in (1) the extent to which the invalidity of the challenged statute must be demonstrated and (2) the corresponding breadth of the remedy. *Bucklew v. Precythe*, 587 U.S. 119, 138 (2019).  For a facial constitutional challenge, the movant must establish that "no set of circumstances exists under which the [challenged statute] would be valid." *Lynchburg Republican City Comm.*, 793 F. Supp. 3d at 774 (quoting *United States v. Hosford*, 843 F.3d 161, 165 (4th Cir. 2016)).  For an as-applied challenge, the movant must only show that the "law is unconstitutional as applied to the challenger's case." *Id.* (quoting *United States. v. Mgmt. Consulting, Inc.*, 636 F. Supp. 3d 610, 619 (E.D. Va. 2022)).  The distinction between the two does not affect the substantive rule of law necessary to establish a constitutional violation. *Bucklew*, 587 U.S. at 138.

We begin with Plaintiffs' as-applied challenge.  "A case is fit for judicial decision when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties." *Va. Dep't of State Police*, 713 F.3d at 758 (quoting *Miller,* 462 F.3d at 318).  Ripeness can rest on anticipated future injury, but the future injury must not "rest upon contingent future events that may not occur as anticipated or indeed may not occur at all." *Wild Virginia*, 56 F.4th at 295 (quoting *South Carolina v. United States*, 912 F.3d 720, 730 (4th Cir. 2019)) (cleaned up).

Here, Plaintiffs only allege injury that is "dependent on future uncertainties." *Va. Dep't of State Police*, 713 F.3d at 758.  Plaintiffs' allegations that Section 24.2-509(A) precludes them

from using a non-primary nomination method, and therefore restricts their First Amendment associational rights, (*see, e.g.*, Compl. ¶¶ 61–63, 72–75), are based on Plaintiffs "hypothetical view of what the [statute's] one-sentence absentee provision will come to mean." *Lynchburg Republican City Comm.*, 793 F. Supp. 3d at 783–84. As explained above, Plaintiffs do not allege any attempt to use a non-primary nomination method or any rejection of such a method by Defendants. Nor do they allege an intention to use a specific non-primary nomination method in the future or explain why such a method would "necessarily run afoul" of the statute. (Pl.'s Resp. at 12.) As explained above, Plaintiffs also fail to allege a credible threat of enforcement. Simply put, the legal inquiry for this as-applied challenge would "turn on facts that are not yet in the record and, indeed, may never arise." *Lynchburg Republican City Comm.*, 793 F. Supp. 3d at 788.

Plaintiffs nevertheless contend that their First Amendment claims are ripe because "the timeline established under Virginia law" leaves "insufficient time" for the nomination method to be adjudicated prior to an election, leaving Plaintiffs facing "unknown but possibly drastic consequences," including "los[ing] the chance to even compete for the office in question." (Pl.'s Resp. at 19–20.) But as explained above, Section 24.2-516 merely sets a window for *notification* of the nomination method (should it be a primary). It does not require the adjudication of a nomination method's compliance with Section 24.2-509(A) to take place during that twenty-day window. And Plaintiffs have not provided any non-speculative allegations suggesting that they would be prevented from implementing a non-primary nomination method, which complies with the absentee requirements in Section 24.2-509(A) by their next deadline. Instead, Plaintiffs only and fatally "*speculate*[] that [their] future attempts

- 21 -

will be rejected and [their] rights burdened." *Lynchburg Republican City Comm.*, 793 F. Supp. 3d
at 783.

Plaintiffs once again point to *Miller* to salvage the justiciability of their claims.  (Pl.'s
Resp. at 19 (quoting 462 F.3d at 319).)  And *Miller* yet again fails to save them.  The *Miller*
court found that the case was fit for judicial review because "[t]he only issue in the case [was]
whether Virginia's open primary law violate[d] the plaintiffs' First Amendment rights to freely
associate, which present[ed] a purely legal question." *Miller*, 462 F.3d at 319.  The *Miller* court
found this despite one uncertainty: "whether another candidate will file for office as
contemplated by [the statute at issue]." *Id.*  But as explained above, this case presents an
"altogether different situation" from *Miller*. *Lynchburg Republican City Comm.*, 793 F. Supp. 3d
at 783.  "Whereas *Miller* left only a legal question to be resolved, the [Plaintiffs] claims here
hinge upon factual uncertainties and administrative actions that render them unfit for this
[c]ourt's intervention." *Id.*

Plaintiffs' invocation of *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289 (1979)
similarly fails to support ripeness.  In *Babbitt*, plaintiffs challenged several provisions of the
Arizona Agricultural Employment Relations Act, including procedures governing the election
of employee bargaining representatives.  442 U.S. at 292–93.  Plaintiffs here rely on a footnote
from the case, in which the Supreme Court explained:

> Though waiting until appellees invoke unsuccessfully the statutory election
> procedures would remove any doubt about the existence of concrete injury
> resulting from application of the election provision, little could be done to
> remedy the injury incurred in the particular election.  Challengers to election
> procedures often have been left without a remedy in regard to the most
> immediate election because the election is too far underway or actually
> consummated prior to judgment.  Justiciability in such cases depends not so

> much on the fact of past injury but on the prospect of its occurrence in an
> impending or future election.

*Babbitt*, 442 U.S. at 300 n.12 (internal citations omitted). Plaintiffs emphasize the last sentence

of the quotation, implying that the sentence supports ripeness in their case. (*See* Pl.'s Resp. at

19.) But it does the opposite. Because Plaintiffs have not made any non-speculative

allegations that they face a credible threat of enforcement in the future, they have not

established a "prospect of [injury] in an impending or future election," *Babbitt*, 442 U.S. at 300

n.12, rendering their claims unfit for judicial resolution. In fact, as Defendants point out, the

claims in the present case are more like those claims the *Babbitt* court found to be unripe.

(Def.'s Reply at 6–7.) For example, the *Babbitt* court found unripe a challenge to a provision

limiting union access to farmworkers because it was "conjectural to anticipate that access will

be denied" under the provision. *Babbitt*, 442 U.S. at 303–04. The court here can "only

hypothesize" that injury to Plaintiffs under Section 24.2-509(A) will come to pass. *Id.* at 304.

Therefore, like in *Babbitt*, the adjudication of Plaintiffs' challenge must wait until they allege a

"palpable basis for believing that [their nomination method] will be refused." *Id.*

Next, Plaintiffs' vagueness claims are not ripe for judicial resolution because they also

rest on conclusory allegations about hypothetical enforcement of the statute in the future.

Plaintiffs take issue with the fact that (1) the statute does not define certain terms, like

"practical effect," (2) the statute does not specify which non-primary nomination methods

would comply with its requirements, (3) Defendants have not provided any guidance on the

same, and (4) the statute does not set out the consequences for failure to comply with its

provisions. (Compl. ¶¶ 82–85.) As a result, Plaintiffs conclude Defendants would reject any

non-primary nomination method and "not place the nominee(s) selected in such nomination method on the general election ballot." (*Id.* ¶ 86.)

But the Complaint does not contain allegations of any prior enforcement actions by Defendants or any support for the conclusion that Defendants would reject a non-primary nomination method should Plaintiffs propose one. Nor does Plaintiffs' response brief specifically address the ripeness of their vagueness claim. A statute may be void for vagueness if it fails to "give a person of ordinary intelligence adequate notice of what conduct is prohibited" or lacks "sufficient standards to prevent arbitrary and discriminatory enforcement." *Manning v. Caldwell for City of Roanoke*, 930 F.3d 264, 272 (4th Cir. 2019). Plaintiffs have not plead any facts suggesting that the statute fails to meet this standard.

The court can "only hypothesize" as to the future conduct of Plaintiffs and Defendants, which renders an opinion at this moment "patently advisory." *See Lynchburg Republican City Comm.*, 793 F. Supp. 3d at 784 (quoting *Babbitt*, 442 U.S. at 304). Any decision by Defendants about Plaintiffs' nomination methods has not "been formalized" and the effects have not been "felt in a concrete way" by Plaintiffs. *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148–49 (1967).

In addition to fitness for judicial intervention, courts also weigh the hardship that withholding judicial review would cause the parties. *Wild Virginia*, 56 F.4th at 294. "The hardship prong is measured by the immediacy of the threat and the burden imposed on the [plaintiffs] who would be compelled to act under threat of enforcement of the challenged law." *Miller*, 462 F. 3d at 319 (quoting *Charter Fed. Sav. Bank v, Office of Thrift Supervision*, 976 F.2d 203, 208-09 (4th Cir. 1992)). Here, withholding judicial review of Plaintiffs' as-applied challenge

will not cause them undue hardship because they face no immediate threat of injury. *See Klemic v. Dominion Transmission*, 138 F. Supp. 3d 673, 685 (W.D. Va. 2015). Plaintiffs fail to allege any impending deadlines, pending adjudications under the statute, or anything else to suggest they will face any hardship should the court withhold judicial review. As discussed above, Plaintiffs have not shown a credible threat of enforcement or any non-speculative suggestion that enforcement would necessarily go against them.

Plaintiffs claim that "there is no mechanism under Virginia law for Plaintiffs to 'request' to use a non-primary method of nomination." (Pl.'s Resp. at 18.) But Virginia law does not "preclude a political party from developing and seeking approval of their non-primary method" before the notification window set by Va. Code § 24.2-516. *Lynchburg Republican City Comm.*, 793 F. Supp. 3d at 786. While neither party provides evidence of a structured pre-clearance process, the Department of Elections is obligated to "support parties' attempts at compliance in a way that safeguards their right to hold non-primary nominations" under Section 24.2-103(A), which provides that the "Department of Elections shall . . . make rules and regulations and issue instructions and provide information consistent with the election laws to the electoral boards and registrars to promote the proper administration of election laws." *Id.* at 787. Also, Plaintiffs are free to "petition the board to consider regulatory action." 1 Va. Admin. Code 20-10-50. The "statutory and administrative schema" for Virginia's elections suggests that Plaintiffs, Defendants, and all political parties should "engage[] in a working relationship to balance the interests of free association and absentee voting." *Lynchburg Republican City Comm.*, 793 F. Supp. 3d at 787. Plaintiffs offer no plausible allegations to suggest that Defendants have not been operating in good faith or will not do so going

forward. Because Plaintiffs have not alleged an immediate threat of injury or even enforcement, nor have they alleged a non-speculative burden imposed by the statute, the court finds Plaintiffs' as-applied challenge not ripe.

Next, to mount a facial challenge, Plaintiffs must show that all conceivable applications of the statute are unconstitutional. *See id.* at 789. A facial challenge is the "most difficult to mount successfully" because of this very high bar. *United States v. Nutter,* 137 F.4th 224, 229 (4th Cir. 2025) (quoting *United States v. Rahimi,* 602 U.S. 680, 708 (2024)). A facial challenge to a statute is "ripe for consideration when it raises a purely legal question as to the constitutionality and validity of the statute in question." *Grano v. Rappahannock Elec. Coop.*, 552 F. Supp. 3d 563, 570 (W.D. Va. 2021) (citing *Ballantyne Village Parking, LLC v. City of Charlotte*, 818 F. App'x 198, 203 (4th Cir. 2020)). But if Plaintiffs' as-applied challenge is unripe, "it stands to reason that [their] larger facial challenge is unripe, too, because facial challenges depend on the plaintiff showing that no application of the statute could be constitutional, including application to its own circumstances." *Lynchburg Republican City Comm.*, 793 F. Supp. 3d at 789. Therefore, Plaintiffs' facial claim is not ripe.

Because Plaintiffs do not have standing and their claims are not ripe, the court does not have subject matter jurisdiction over this case. Thus, the court will not reach the merits of Plaintiffs' claims and will grant Defendants' motion to dismiss for lack of subject matter jurisdiction. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 480 (4th Cir. 2005) ("[S]ubject-matter jurisdiction is a necessary prerequisite to any merits decision by a federal court.").

## C.  Jurisdictional Discovery

Plaintiffs also filed a Motion for Leave to Conduct Discovery Limited to the Issue of Subject Matter Jurisdiction.  (Dkt. 55.)  Plaintiffs contend that "Defendants are in possession of much of the evidence that will establish personal jurisdiction."  (Dkt. 56 at 4–5.) Defendants counter that Plaintiffs are not entitled to jurisdictional discovery because Defendants made a facial attack in their motion to dismiss, rather than a factual one, and that therefore it would be inappropriate for the court to grant the motion.  (*See* Dkt. 59. at 1–4.)

The court agrees with Defendants.  In their response brief, Defendants show in detail that their motion to dismiss does not challenge the *factual truth* of the Complaint, but rather contends that the Complaint has not alleged *sufficient facts* upon which subject matter jurisdiction can be based.  (*See id.*)  Where a defendant makes a facial attack, the court must proceed as it would on a motion to dismiss for failure to state a claim and decline to consider materials outside the pleadings.  *See Adams*, 697 F.2d at 1219.

Plaintiffs do not show that jurisdictional discovery would be necessary.  They fail to explain why they were unable to even *allege* the jurisdictional facts necessary to establish that their case is justiciable.  The court, therefore, will use its broad discretion here to deny the motion for limited discovery.  *See Seaside Farm, Inc. v. United States*, 842 F.3d 853, 860 (4th Cir. 2016) ("District courts exercise broad discretion over discovery issues.").

## IV.    Conclusion

For the foregoing reasons, the court will grant Defendants' motion to dismiss, (Dkt. 47), and deny Plaintiffs' motion for leave to conduct limited discovery, (Dkt. 55).  Plaintiffs' First Amendment and Fourteenth Amendment claims will be dismissed without prejudice.

An appropriate Order will issue.

**ENTERED** this  8th  day of December, 2025.

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE